JOSEPH MOREY, Appellant, *v.* LEHIGH VALLEY RAILROAD COMPANY, Respondent.

Third Department, December 28, 1916.

Railroads — negligence — defect in scaffolding used to construct ceiling in railroad station — Employers' Liability Act of Pennsylvania — when liability of defendant question for jury.

A plank furnished by a railroad company and placed upon brackets to enable workmen to construct the ceiling of a railroad station is a structure for defects in which the jury may find the railroad company liable under the Employers' Liability Act of the State of Pennsylvania, and this is so although the plaintiff and his fellow-workmen, thinking the structure not entirely secure, supported the plank by placing a perpendicular plank under it to prevent it from sagging.

WOODWARD and COCHRANE, JJ., dissented, with opinion.

APPEAL by the plaintiff, Joseph Morey, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Chemung on the 24th day of April, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case, and also, as stated in the notice of appeal, from the order granting the nonsuit.

*Charles C. Annabel,* for the appellant.

*Cobb, Cobb, McAllister, Feinberg & Heath* [*Riley H. Heath* of counsel], for the respondent.

KELLOGG, P. J.:

Evidently the horizontal plank was furnished by the company as a platform. The work upon the ceiling could not be

done without the use of a platform. Those who had worked upon the ceiling before the plaintiff came evidently considered this plank as the platform furnished them. There is no suggestion that any other platform was furnished. The fact that the plaintiff and his fellow-workmen, when they were required to finish the work upon the ceiling, thought that the platform was not entirely secure and put a perpendicular plank under it to prevent it from sagging does not relieve the defendant from the duty of furnishing a suitable platform. Of course, if the platform was sufficient aside from the upright plank, and they rendered it insecure by attempting to fix it, the plaintiff should not recover. It is difficult to see how the upright plank could act as a pivot and make the platform more insecure than it was before. It was a fair question of fact for the jury to determine whether the plank was furnished as a platform and whether the plaintiff and his companion, by tampering with it, rendered it insecure and unsafe.

The order and judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

All concurred, except WOODWARD, J., who dissented in opinion, in which COCHRANE, J., concurred.

WOODWARD, J. (dissenting):

The plaintiff has been nonsuited, and is, of course, on this appeal entitled to the favorable inferences which a jury might properly draw from the evidence. The difficulty with the plaintiff's case, however, is that there are no legitimate inferences to be drawn in his favor from the evidence which was produced upon the trial in so far as it relates to the alleged negligence of the defendant.

The defendant is a railroad corporation, but the plaintiff was not engaged in the operation of the railroad; he was a carpenter and, at the time of the accident, was employed in the work of finishing up a milk station for the defendant at Meshoppen, Penn. While the plaintiff pleads the Employers' Liability Act of Pennsylvania (Penn. Laws of 1907, p. 523, No. 329) and suggests that the case is in some manner controlled by the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143), the

trial proceeded upon the common-law theory, and is to be determined by the rules governing such actions. It appears that the defendant was engaged in repairing and rebuilding a milk station at Meshoppen on the 15th day of June, 1915; that the work had been under way for some time, and that the workmen who had been previously employed had left a portion of the ceiling unfinished. They had erected a scaffolding along two sides of the room, and on the day of the accident there was a pine plank extending from these scaffoldings across the room, a distance of about twenty feet. This plank appears to have been substantially the length of the width of the room, and was about ten feet above the cement floor of the building, either end resting upon the scaffolding along the sides of the room. The plaintiff, with other workmen, was directed to complete the work of ceiling the building overhead, the ceiling being about seven feet above the level of the plank. The plaintiff went outside the building and found a plank which he cut off at a length of about ten feet, and placed it under the center of the plank above mentioned, and his fellow-workman, Charles Coolbaugh, walked to the center of the plank, forcing it down to the end of the perpendicular plank, and drove a spike through the horizontal plank and into the end of the upright plank. Having thus fixed the plank to their satisfaction, and apparently having all of the tools, materials and appliances necessary to the work, Coolbaugh walked to the further end of the plank, and the plaintiff, with the aid of a stepladder, climbed onto the plank at the opposite end and took his place near the center of the horizontal plank and near the supporting plank, and while attempting to raise a piece of ceiling to be nailed in place the horizontal plank became displaced and fell, throwing the plaintiff to the floor beneath, producing injuries for which he seeks recovery.

The plaintiff's theory is that the scaffolding having been erected by persons who were not his fellow-servants at the time, and having been left in place by the defendant for the purpose of completing the work, the defendant assumed the responsibility for the condition of the scaffolding, and that in this lies the negligence. The difficulty is that, assuming this single plank, twenty feet long laid across the room, was

designed as a part of the scaffolding, there is no evidence that the defendant in any manner directed the plaintiff to make use of this scaffolding. On the contrary, the plaintiff himself appears to have recognized that the plank was not a safe support for the weight to be imposed upon it, and he assumed to change the condition of the plank. He found at hand a plank which he himself selected as a support for the middle of the plank, and his fellow-laborer nailed the plank to the sup port. He makes no suggestion that he asked for or sought any other materials to strengthen the scaffolding, and it must be assumed, therefore, that the defendant had furnished the materials which the plaintiff thought necessary to secure his own safety. The plaintiff, so far as appears, took the initiative in fixing the place on which he was to perform the work, and the only fair inference from the evidence is that the supporting plank operated as a pivot on which the horizontal plank worked throwing the opposite end of the plank up and off from the supporting scaffolding and causing the plank to fall. The testimony of Mr. Coolbaugh, that the plank could not have fallen if it had been nailed to its support at the ends, is a mere conclusion, and is entirely negatived by his cross-examination, where he describes the accident and says that the result was produced by the pivoting of the horizontal plank upon the support, which caused the end of the plank to be lifted up and thrown from its position. There is no evidence from which the jury would be justified in finding that the nailing of this plank to the supporting scaffoldings at the end would have obviated the difficulty. At any rate, the plaintiff, having assumed to change the condition of the plank, is not in a position to allege that the defendant was negligent in providing this place for him to work. He saw the plank and its suspension; he knew that it was not a safe place to work as it then stood, and he undertook to remedy the condition; he assumed jurisdiction of the scaffolding and undertook to make it safe, and if the nailing of the ends of the plank was necessary to this end, it was as much his duty to do the nailing as it was to put the support under the center. The defendant certainly did not hold out this plank, as supported by the plaintiff's act, as a proper place for him to work. The plaintiff having changed

the original condition, he was as much responsible for the entire scaffolding as though he had gone out and found the horizontal plank and placed it where he found it on the morning of the accident.

I am of the opinion that the case presented no evidence which would warrant a jury in finding negligence on the part of the defendant, and that the motion to dismiss the complaint upon the merits was properly granted.

The judgment and order appealed from should be affirmed, with costs.

COCHRANE, J., concurred.

Order and judgment reversed and new trial granted, with costs to the appellant to abide the event.